IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | NO. 3:21-CR-0054-N |
| v. | |
| DANIEL REY SETTLE a.k.a. "POLO" | |

**UNITED STATES' OPPOSITION TO DEFENDANT'S AMENDED
PRETRIAL MOTION TO DISMISS THE INDICTMENT
AND REQUEST FOR EVIDENTIARY HEARING**

LEIGHA SIMONTON
UNITED STATES ATTORNEY

*/s/ Myria Boehm*
Myria Boehm
Texas State Bar No. 24069949
Andrew J. Briggs
California State Bar No. 294224
Assistant United States Attorneys
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8600
Facsimile: 214-659-8800
Email: myria.boehm@usdoj.gov

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES...................................................................................iii

UNITED STATES' OPPOSITION TO DEFENDANT'S AMENDED PRETRIAL
MOTION TO DISMISS THE INDICTMENT AND REQUEST FOR EVIDENTIARY
HEARING ............................................................................................................... 1

1.    RELEVANT BACKGROUND............................................................................. 2

2.    ARGUMENT AND AUTHORITIES .................................................................... 5

       A.    A pretrial detainee's complaints about unconstitutional conditions of
             detention are appropriately addressed in a motion to reconsider detention
             and its attendant appeals or after exhausting those remedies, in a 28 U.S.C.
             § 2241 motion—not a motion to dismiss the indictment ............................. 5

       B.    The magistrate judge had authority to restrict Settle's contact with his
             victim, AV1, the order was not overly broad, and did not violate his First,
             Fifth, or Sixth Amendment rights ............................................................. 8

       C.    In light of Settle's repeated and continuous violation of the magistrate
             judge's unappealed no-contact order, the government's request to restrict
             his telephone and email communications was not unconstitutional or
             unduly restrictive ...................................................................................... 11

3.    CONCLUSION ................................................................................................. 16

CERTIFICATE OF SERVICE ......................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**                                                                                      **Page(s)**

*Bell v. Wolfish*, 441 U.S. 520 (1979) ............................................................................. 11, 12

*Bitter v. United States*, 389 U.S. 15 (1967) ........................................................................ 9

*Fassler v. United States*, 858 F.2d 1016 (5th Cir. 1988) ..................................................... 6

*Gumbel v. Pitkin*, 142 U.S. 131 (1888) .............................................................................. 8

*Lopez v. Reyes*, 692 F.2d 15 (5th Cir. 1982) ..................................................................... 12

*Reed v. Dallas County Sheriff's Dep't*, 2004 WL 2187104 (N.D. Tex. Sept. 28, 2004) .. 12

*Thornburgh v. Abbott*, 490 U.S. 401 (1989) ..................................................................... 13

*Turner v. Safley*, 482 U.S. 78 (1987) ................................................................................. 12

*United States v. Delker*, 757 F.2d 1390 (3d Cir. 1985) ..................................................... 10

*United States v. Grigsby*, 737 F. App'x 375 (10th Cir. 2018) ............................................. 8

*United States v. Long*, 597 F.3d 720 (5th Cir. 2010) .......................................................... 7

*United States v. Morris*, 259 F.3d 894 (7th Cir. 2001) ....................................................... 8

*United States v. Olivarez*, 2022 WL 16836338 (S.D. Tex. Nov. 9, 2022) ................. 10, 11

*United States v. Paquin*, No. CR 21-568-MV, 2021 WL 4319663 ..................................... 8

*United States v. Perez-Garcia*, 2022 WL 4351967 (S.D. Cal. Sept. 18, 2022) ............... 10

*United States v. Pipito*, 861 F.2d 1006 (7th Cir. 1987) ....................................................... 6

*United States v. Salerno*, 481 U.S. 739 (1987) ................................................................. 11

*United States v. Shakur*, 1987 WL 12404 at 8 (S.D.N.Y. Jun. 11, 1987)). ......................... 6

*United States v. Simpson*, 2010 WL 4340683 (N.D. Tex. Oct. 26, 2010) ........................... 6

*United States v. Thomas*, 540 F. Supp. 3d 363 (W.D.N.Y. 2021) ..................................... 10

**Federal Cases, continued**                                                    **Page(s)**

*Valdez v. Rosenbaum*, 302 F.3d 1039 (9th Cir. 2002).........................................13

*Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994)............................................12

*Wheeler v. United States*, 640 F.2d 1116 (9th Cir. 1981) ...................................8

**Federal Statutes and Regulations**

18 U.S.C. § 3141 ...........................................................................................7, 8

18 U.S.C. § 3145 ..............................................................................................6

18 U.S.C. § 3145(b) ..........................................................................................7

18 U.S.C. § 3145(c) ..........................................................................................7

42 U.S.C. § 1983 ..............................................................................................5

Religious Land Use and Institutionalized Persons Act of 2000, Pub. L. No. 106-274,
   114 Stat. 803 ...............................................................................................12

28 C.F.R. § 540.100 (2022) .............................................................................13

**UNITED STATES' OPPOSITION TO DEFENDANT'S AMENDED
PRETRIAL MOTION TO DISMISS THE INDICTMENT
<u>AND REQUEST FOR EVIDENTIARY HEARING</u>**

The government opposes defendant Daniel Rey Settle's "Amended Pretrial Motion to Dismiss the Indictment and Request for an Evidentiary Hearing" filed on September 25, 2023.  (Dkt. 137.)  Settle moves the Court to dismiss the indictment for alleged violations of his constitutional rights during pretrial detention.  Specifically, Settle contends:

1.     The magistrate judge's order restricting his communication with Adult Victim 1 (AV1) was outside the scope of its authority, overbroad, and in violation of his First and Sixth Amendment rights.  (Dkt. 137 at 9-13.)

2.     The prosecution violated his constitutional rights under the First, Fifth, and Sixth Amendments by asking the United States Marshals Service (USMS) to deny him telephone and electronic mail privileges.  (Dkt. 137 at 13-18.)

The Court should deny Settle's motion because there was no constitutional violation and even if there had been, dismissal of the indictment is not the appropriate mechanism for redress or remedy.

1.    **RELEVANT BACKGROUND**

Since the date of his initial detention, Settle engaged in a relentless campaign of obstruction, corruptly attempting to influence, impede, and prevent the testimony of AV1.  At Settle's initial appearance, the magistrate judge ordered him not to have any contact with AV1.  (Dkt. 17 at 8.)   Despite that admonition as well as admonitions by government counsel, his counsel, and the investigating agents, Settle continued to contact AV1 on an almost daily basis.  (Dkt. 58-1 at 1; 137 at 47-48.)

In several of those calls, Settle manipulatively attempted to dissuade or prevent AV1 from cooperating with the government.  On January 29, 2021, Settle made multiple calls to AV1.  (Dkt. 58-1 at 1.)  Settle recommended that AV1 stay with his brother in Kentucky to "get away from everybody and everything for a while."  (*Id*.)  In other calls that day, Settle made multiple attempts to dissuade AV1 from going to a victim's shelter, telling AV1 that "they are going to try to turn you against me" and that AV1 was "trying to go somewhere where people are trying to take you away from me."  (*Id*.)  During an April 12, 2021 call to AV1, Settle ordered AV1 to "go through my inboxes and . . . try to clean them up. You hear me? You need to try to clean up my inboxes – you understand what I'm saying?"  (*Id*.)

Even when, in May 2021, Settle's contact with AV1 resulted in an additional criminal charge, he did not stop.  (Dkt. 19.)  On July 29, 2021, Settle messaged AV1: "All you ever had to do was leave if you aint want to f*** with me, but instead of that, you'd rather hang around and f*** off my life and destroy the good thing I was trying to be."  (Dkt. No. 58-1 at 2.)  During a December 15, 2021 call to AV1 regarding the status

of his case, Settle told AV1 that she is "letting people turn [her] against him." (Dkt. No. 58-1 at 1.)

Settle's constant, manipulative contact with AV1 went on for over a year before the government, on February 9, 2022, asked the USMS to restrict Settle's telephone and electronic communications for a period of 90 days. (Dkt. 58-1 at 1-2.) The government's request specifically carved out an exception for communication with counsel, did not request placement in the Special Housing Unit (SHU), and did not restrict regular mail or in-person visits. (*Id.*) Despite those restrictions, Settle still managed to unlawfully communicate with AV1 on multiple occasions via text message:

- "I'm in the shu I cant use the phone"

- "He said not to say anything and to not let them scare you they cant do anything to you and that he loves and misses you . . ."

- "[H]e said they are going to try and scare you and get you to do shit but they can't do nothing to you . . ."

- "He said he love u n miss u they won't let him call he said to not go to court"

(Dkt. 60 at 1-2.) Because Settle was undeterred, the government renewed its request in June 2022. (Dkt. 137 at 119.)

During his time in pretrial detention, Settle was periodically housed in the SHU. Bureau of Prisons (BOP) records show that he was in the SHU (also known as Administrative Detention (AD)) from August 24, 2021 through September 17, 2021, February 9, 2022 through April 19, 2022, and June 9, 2023 through July 13, 2023. (*See* Gov't Appendix 1.) However, the government did not request that placement. (*See* Dkt.

58-1.)  A detainee may be placed in AD status for routine, non-punitive institutional reasons, such as protective custody, pending transfer outside the institution, or pending investigation and disciplinary hearing.[1]

In the instant motion, Settle complains that the restrictions imposed by the USMS severely restricted his ability to communicate with counsel.  However, the contemporaneous record belies that assertion.  The government-requested communication restrictions began in February 2022.  On March 24, 2022, Settle wrote a letter to the Court requesting new counsel.  (Dkt. 45.)  He did not complain that he was unable to contact his attorney, Anthony Eiland.  Instead, he complained that they could not "effectively communicate" because of "differing philosophical reasons" and that his attorney "misrepresented [him] and went against [his] wishes several times."  (Dkt. 45 at 1.)  Similarly, at the March 30, 2022 hearing on his motion for new counsel, neither Settle nor his attorney at the time complained that the conditions of his detention affected their ability to consult with one another.  (Dkt. 119 at 3-7.)

On July 4, 2022, Settle's new attorney, Mark Watson, filed a motion seeking the reinstatement of Settle's phone and electronic communications.  (Dkt. 58.)  Likewise, at a July 19, 2022 hearing on that motion, Mr. Watson's only comment about the restrictions affecting their communication was that Settle, at that time, was unable to email him, but he expected that to be resolved by the end of that day or the next day.  (Dkt. 121 at 5.)  Based on Mr. Watson's and the government's arguments as well as Settle's stray

---

[1]https://www.bop.gov/policy/progstat/5270_010.pdf (last viewed Oct. 5, 2023).

comments, it is clear that Settle's primary concern was his inability to communicate with his sister and children, not that there was an issue communicating with counsel.  (Dkt. 121 at 8-10, 12-15.)

Similarly, on December 13, 2022, Settle filed another pro se motion seeking new counsel.  (Dkt. 109.)  Again, he did not complain about an inability to contact Mr. Watson, only about the contentiousness of that contact.  (Dkt. 109.)  On December 20, 2022, Settle filed a pro se motion asking the Court to vacate his detention order and grant him pretrial release based on the length of his pretrial detention.  (Dkt. 115.)  The government responded arguing that Settle's motion should be stricken because he was not entitled to hybrid representation or denied as meritless.  (Dkt. 116.)  On December 21, 2022, a hearing was held to address Settle's December 13th request for new counsel. (Dkt. 120.)  Yet again, neither Settle nor Mr. Watson complained that access to communication was the problem; instead, it was the contentiousness of that communication.  (Dkt. 120.)

## 2.    ARGUMENT & AUTHORITIES

### A.    A pretrial detainee's complaints about unconstitutional conditions of detention are appropriately addressed in a motion to reconsider detention and its attendant appeals or after exhausting those remedies, in a 28 U.S.C. § 2241 motion—not a motion to dismiss the indictment.[2]

Settle seeks the dismissal of his criminal case based on alleged violations of his constitutional rights caused by his conditions of confinement.  However, such a motion is

---

[2] Injunctive or monetary relief could also be sought through a civil rights action brought under 42 U.S.C. § 1983.

not the appropriate vehicle for redress of his complaints.  The remedy for unconstitutional

pretrial detention conditions is modification of those conditions or release from custody.

*See Fassler v. United States*, 858 F.2d 1016, 1017-18 (5th Cir. 1988) (holding that a

pretrial detainee who seeks to challenge a detention order as illegal, unconstitutional,

and/or punitive should first exhaust the remedies provided in 18 U.S.C. § 3145).  Further,

the safeguards of the Bail Reform Act are available to ensure proper detention, but "[i]f

the particular conditions of his incarceration are punitive, his remedy is a civil rights

action."  *See United States v. Simpson*, No. 3:09-CR-249-D, 2010 WL 4340683 at * 2

(N.D. Tex. Oct. 26, 2010) (quoting *United States v. Shakur*, No. SSS 82 CR 312 (CSH),

84 CR 330 (CSH), 1987 WL 12404 at 8 (S.D.N.Y. Jun. 11, 1987)).

In seeking dismissal of his criminal case based on his allegedly unconstitutional

pretrial-detention conditions, Settle appears to be seeking habeas corpus relief as a

complaining petitioner would in a 28 U.S.C. § 2241 petition.  A Section 2241 petition

generally attacks the fact, duration, or conditions of a prisoner's confinement.  However,

a pretrial detainee who seeks to challenge a detention order through a Section 2241

petition should first exhaust the remedies provided in 18 U.S.C. § 3145.  *Fassler*, 858

F.2d at 1017-18.  While *Fassler* did not hold that Section 3145 provides the only means

for a federal prisoner to challenge a detention order, it made clear that Section 3145 is the

preferred and most appropriate means.  *Id*; *see also United States v. Pipito*, 861 F.2d

1006, 1009 (7th Cir. 1987) (holding that the district court properly refused to entertain a

federal detainee's Section 2241 petition because he should have sought review of his

detention order under Section 3145).

Pursuant to 18 U.S.C. § 3145(b), a federal pretrial detainee may move for revocation or amendment of a detention order issued under the Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, and the detainee may appeal either his detention order or order denying revocation or amendment to the court of appeals.  *See* 18 U.S.C. § 3145(c). Here, Settle did not appeal his detention order, which included the orally pronounced restriction on communication with AV1, to this Court, or to the court of appeals.  He also did not seek reconsideration in this Court of his detention based on the government-requested telephone and email restrictions,[3] which were imposed more than a year after he was initially detained.  To the extent Settle's "Motion for Determination of Phone and Email Privileges of Defendant" could be construed as a motion to reconsider his detention, he did not allege constitutional violations in that motion, as he does here, and he did not appeal from the Court's denial of that motion.  (Dkt. 58.)

Because Settle has failed to pursue his complaints through the appropriate mechanisms, the Court should summarily deny his motion to dismiss the indictment and could do so without consideration of the merits.  However, as shown below, the pretrial communications restrictions imposed by the magistrate judge and later requested by the government did not violate Settle's constitutional rights, and dismissal of the indictment is certainly not warranted.

---

[3] On December 20, 2022, despite having counsel, Settle filed a pro se motion to reconsider his detention alleging that the length of his pretrial detention had violated his due-process rights. (Dkt. 115.)  It does not appear that this motion was stricken or ruled upon.  However, Settle was/is not entitled to hybrid representation. *United States v. Long*, 597 F.3d 720, 724 (5th Cir. 2010).  A day later, on December 21, 2022, the Court appointed new counsel for Settle, and his motion was not renewed through counsel. (Dkt. 112.)

**B.     The magistrate judge had authority to restrict Settle's contact with his victim, AV1, the order was not overly broad, and did not violate his First, Fifth, or Sixth[4] Amendment rights.**

While the Bail Reform Act may limit a court's ability to impose a no-contact order only as a condition of release, it does not prohibit a court from imposing similar conditions when a defendant is detained.  *See* 18 U.S.C. § 3141 *et seq*.  The Supreme Court has long held that district courts have inherent "equitable powers…over their own process, to prevent abuses, oppression, and injustice," *Gumbel v. Pitkin*, 142 U.S. 131, 144 (1888), and those powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases," *Chambers v. NASCO, Inc.*, 501  U.S. 32, 43 (1991) (internal citation omitted).  That inherent authority extends to the protection of witnesses and victims.  *See United States v. Morris*, 259 F.3d 894, 901 (7th Cir. 2001) (holding that the district court had inherent authority to issue a post-trial order prohibiting contact with a victim "to protect the administration of justice");  *Wheeler v. United States*, 640 F.2d 1116, 1123 (9th Cir. 1981) (recognizing the court's inherent power to protect witnesses in order to protect the administration of justice from abuses, oppression, and injustice) (cleaned up); *United States v. Grigsby*, 737 F. App'x 375, 377 (10th Cir. 2018) (finding that the sentencing court had ancillary jurisdiction to issue a no-contact order to protect the defendant's victim); *United States v. Paquin*, No. CR 21-568-MV, 2021 WL 4319663 at *4 (D. N.M. (Sept. 23, 2021)) (analyzing *Morris*, *Wheeler*, and *Grigsby* to conclude

---

[4] Settle claims that the magistrate judge's order violated his Sixth-Amendment rights, but he does not explain how, and as a result, the government cannot respond.

that a district court has inherent authority to protect victims and witnesses through narrowly drawn no-contact orders).  The cited circuit-court cases deal with a court's post-trial authority to issue no-contact orders.  That authority is even more compelling in a pretrial context to protect witnesses from intimidation and violence thereby ensuring the fair administration of justice.  Undoubtedly, the court's inherent authority must be exercised with caution and "when and to the extent justified by the danger which the defendant's conduct presents or by danger of significant interference with the progress or order of the trial." *Bitter v. United States*, 389 U.S. 15, 16 (1967).

Settle complains that the magistrate judge's order violated his due process rights under the Fifth Amendment[5] because there was not a full hearing on the issue.  (Dkt. 137 at 9.)  Here, at the time the no-contact order was initially imposed, Settle had been charged by criminal complaint with sex trafficking AV1 through force, fraud, and coercion.  *United States v. Settle*, No. 3:21-MJ-51-BN.  The criminal-complaint affidavit established that Settle was violent with AV1 and had threatened members of AV1's family.  (*Id*.)  Further, an impartial magistrate determined there was probable cause to support those charges, including the force, fraud, and coercion element.  (*Id*.)  And, finally and most importantly, Settle waived his right to contest the probable-cause finding in a preliminary hearing as well as his right to a detention hearing.  (Dkt. 8-9.)  At his initial appearance and following his waivers, the magistrate judge instructed Settle that he was not allowed any contact with AV1.  (Dkt. 17 at 8.)  As discussed above, Settle did

---

[5] Settle cites the Fourteenth Amendment due process clause; however, due process rights in a federal case are derived from the Fifth Amendment.

not appeal that order, nor did he seek reconsideration of that order.  Settle was not denied his due process rights; he waived them and/or failed to pursue them.

Settle contends that the no-contact order was overly broad and violated his First Amendment rights.  (Dkt. 137 at 11.)  Section 3142(c)(1)(B)(v) of Title 18 authorizes a court to impose as a condition of pretrial release that the defendant have no contact with victims or witnesses.  A pretrial releasee and a pretrial detainee have the same constitutional rights except that the detainee may be subject to additional institutional restrictions and regulations.  Accordingly, if a no-contact provision can pass constitutional muster for a person on pretrial release, it can likewise pass constitutional muster for a pretrial detainee.  "Persons with criminal charges pending are routinely subject to significant restrictions on their constitutional rights once probable cause has been shown."  *United States v. Olivarez*, No. 2:22-CR-00687, 2022 WL 16836338, at *4 (S.D. Tex. Nov. 9, 2022) (quoting *United States v. Perez-Garcia*, No. 3:22-CR-01581-GPC, 2022 WL 4351967, at *6 (S.D. Cal. Sept. 18, 2022)); *see also United States v. Thomas*, 540 F. Supp. 3d 363, 370 (W.D.N.Y. 2021) ("[T]he reality is that once an individual has been charged with a crime, certain rights must give way to reasonable restrictions in order to protect the safety of others and the community, prevent any risk of flight, and ensure compliance with pretrial release conditions.").

No-contact orders are reasonable where, as here, the defendant has a history of violent or coercive behavior toward the victim or witness, where there is a risk of intimidation or harassment of the victim or witness, or where there is a risk of collusion between the defendant and the victim or witness.  *See United States v. Delker*, 757 F.2d

1390, 1401 (3d Cir. 1985) (noting that the legislative history of the no-contact condition "declares that this release condition should be imposed whenever the circumstances are such that the judge believes any form of victim or witness intimidation may occur" including the violent nature of the charged crime) (internal citation omitted); *Olivarez*, 2022 WL 16836338 at * 2 (finding that the risk of collusion alone was sufficient to warrant a no-contact restriction).  Accordingly, the magistrate judge's unappealed order restricting Settle's communication with AV1 was reasonable in light of the circumstances and did not violate his constitutional rights.

> ### C.   In light of Settle's repeated and continuous violation of the magistrate judge's unappealed no-contact order, the government's request to restrict his telephone and email communications was not unconstitutional or unduly restrictive.

While the government recognizes that a pretrial detainee does not lose all rights while awaiting trial, Settle demonstrated that he was unable or unwilling to abide by the magistrate judge's unappealed order to have no contact with AV1.  After over a year of near-constant, manipulative, and coercive contact with AV1 and a resulting additional criminal charge, the government asked the USMS to restrict Settle's telephone and email communications.  (Dkt. 58-1.)  The government's request did not limit Settle's in-person visitation, written mail, or any types of communication with his counsel, nor did it limit his counsel's ability to contact AV1.   (*Id.*)

Pretrial detainees have a substantive due process right against restrictions that amount to punishment.  *United States v. Salerno*, 481 U.S. 739, 746 (1987); *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).  This right is violated if restrictions are "imposed for

the purpose of punishment." *Bell*, 441 U.S. at 535.  However, there is no constitutional

violation if the restrictions are incident to some other legitimate governmental purpose.

*Id*.  Similarly, the First Amendment grants inmates the right to reasonable telephone

access, but such a right is not absolute and is "subject to rational limitations in the face of

legitimate security interests of the penal institution."  *Reed v. Dallas County Sheriff's*

*Dep't*, No. 3:03-CV-2166-R, 2004 WL 2187104, at *8 (N.D. Tex. Sept. 28, 2004)

(quoting *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994)); *see also Lopez v.*

*Reyes*, 692 F.2d 15, 17 (5th Cir. 1982) (Inmates have "no right to unlimited telephone

use").

The Supreme Court has applied a four-factor balancing test to determine the

reasonableness of inmate communication restrictions: (1) the existence of a valid, rational

connection between the restriction and a legitimate governmental interest; (2) the

existence of alternative means to exercise the right; (3) the impact on prison resources of

accommodating the right; and (4) the absence of ready alternatives to the restriction.

*Turner v. Safley*, 482 U.S. 78, 89–91 (1987), *superseded on other grounds by statute*,

Religious Land Use and Institutionalized Persons Act of 2000, Pub. L. No. 106-274, 114

Stat. 803.

Here, all four *Turner* factors weighed in favor of imposing and maintaining the

restriction of Settle's telephone and email communication privileges to attorney

communications only.

*First*, there is a valid, rational connection between the restriction of Settle's

communication privileges and the legitimate governmental interest of preventing the

obstruction of justice.  Before the restriction of his communication privileges, Settle received multiple admonitions to cease communication with AV1—he remained undeterred.  The restriction of Settle's telephone and email privileges operated to directly restrain him from further obstructing justice.  *See Valdez v. Rosenbaum*, 302 F.3d 1039, 1046 (9th Cir. 2002) (holding that a prosecution-requested prohibition on telephone use by a detained codefendant while his at-large, newly indicted codefendants were being apprehended was a valid restriction that was reasonably related to the government's interest).  Thus, a valid connection between this restriction and a legitimate governmental interest exists.

*Second*, Settle has/had alternative means of exercising his right to communicate with his family or friends—he could write them or receive visits from them.  While inmates may have a constitutional right to communicate with family and friends, the Code of Federal Regulations contemplates that the right to do so by telephone is subject to limitations for public protection.  *See* 28 C.F.R. § 540.100 (2022).  The restriction of Settle's communication privileges did not bar him from corresponding with his family and friends by either writing or personal visitation.  A reasonable relationship between the governmental interest and the challenged restriction does not require an exact fit, nor does it require showing a "least restrictive alternative."  *Thornburgh v. Abbott*, 490 U.S. 401, 410-11 (1989).

Settle also contends that the restrictions also interfered with his ability to communicate with his attorney.  (Dkt. 137 at 13.)  That assertion is belied by the record.  The government-requested communication restrictions began in February 2022.  On

March 24, 2022, Settle wrote a letter to the Court requesting new counsel.  (Dkt. 45.)  He did not complain that he was unable to contact his attorney, Anthony Eiland.  Instead, he complained that they could not "effectively communicate" because of "differing philosophical reasons" and that his attorney "misrepresented [him] and went against [his] wishes several times."  (Dkt. 45 at 1.)  Similarly, at the March 30, 2022 hearing on his motion for new counsel, neither Settle nor his attorney at the time complained that the conditions of his detention affected their ability to consult with one another.  (Dkt. 119 at 3-7.)

On July 4, 2022, Settle's new attorney, Mark Watson, filed a motion seeking the reinstatement of Settle's phone and electronic communications.  (Dkt. 58.)  Likewise, at a July 19, 2022 hearing on that motion, Mr. Watson's only comment about the restrictions affecting their communication was that Settle, at that time, was unable to email him, but he expected that to be resolved by the end of that day or the next day.  (Dkt. 121 at 5.)  Based on Mr. Watson's and the government's arguments as well as Settle's stray comments, it is clear that Settle's primary concern was his inability to communicate with his sister and children, not that there was an issue communicating with counsel.  (Dkt. 121 at 8-10, 12-15.)

Similarly, on December 13, 2022, Settle filed another pro se motion seeking new counsel.  (Dkt. 109.)  Again, he did not complain about an inability to contact Mr. Watson, only about the contentiousness of that contact.  (Dkt. 109.)  On December 20, 2022, Settle filed a pro se motion asking the Court to vacate his detention order and grant him pretrial release based on the length of his pretrial detention.  (Dkt. 115.)  The

government responded arguing that Settle's motion should be stricken because he was not entitled to hybrid representation or denied as meritless. (Dkt. 116.) On December 21, 2022, a hearing was held to address Settle's December 13th request for new counsel. (Dkt. 120.) Yet again, neither Settle nor Mr. Watson complained that access to communication was the problem; instead, it was the contentiousness of that communication. (Dkt. 120.) Nothing in the contemporaneous record suggests that Settle was denied access to counsel.

*Third*, less restrictive means of limiting Settle's communication were impractical. The creation of piecemeal communication privileges for Settle to phone his family or friends while under special supervision to ensure that he does not contact AV1 would negatively impact the allocation of prison resources. Doing so would require the USMS or Seagoville FDC counselors to assign resources for supervising Settle's phone use. However, these restrictions stem from Settle's own repeated disregard of repeated admonitions to not contact AV1. In effect, the USMS or Seagoville FDC would be made to bear the weight of Settle's unlawful, obstructive behavior if special accommodations were made for him.

*Fourth*, no ready alternatives existed to prevent Settle from contacting AV1 because he has continued to disregard admonitions to the contrary. Even after the initial restriction of his communication privileges, Settle continued to communicate with AV1 using another detainee's phone access. If the Court had reinstated Settle's communication privileges, the government believes, given his past behavior, that Settle would return to corruptly attempting to influence, impede, and prevent the testimony of

AV1.  Thus, no alternatives existed to prevent Settle's unceasing attempts to obstruct justice.

The government's request to restrict Settle's communications was necessary to prevent obstruction of justice.  Further, it was sufficiently tailored to allow Settle other means of communication with and access to his family and friends as well as unfettered access to his counsel.  Accordingly, those restrictions did not violate his constitutional rights and certainly do not warrant dismissal of the indictment.

## 3.    CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court deny Settle's Amended Pretrial Motion to Dismiss the Indictment And Request For Evidentiary Hearing.

Respectfully submitted,

LEIGHA SIMONTON
UNITED STATES ATTORNEY

*/s/ Myria Boehm*
Myria Boehm
Texas State Bar No. 24069949
Andrew J. Briggs
California State Bar No. 294224
Assistant United States Attorneys
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone: 214-659-8600
Facsimile: 214-659-8800
Email: myria.boehm@usdoj.gov

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 5, 2023, I electronically filed the foregoing document with the clerk for the United States District Court, Northern District of Texas, using the electronic case filing system of the court.  The electronic case filing system will send a "Notice of Electronic Filing" to the attorney of record who has consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Andrew Briggs*
Andrew Briggs
Assistant United States Attorney